1

2

3

4                    UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
                            AT TACOMA

5

6   JOSEPH SCOLARI,

7                          Plaintiff,              CASE NO. C15-5163 BHS

8              v.                                  ORDER DENYING
                                                   DEFENDANT'S MOTION TO
9   ELLIOT RUST COMPANIES, LLC,                    DISMISS OR STAY PENDING
                                                   ARBITRATION
10                         Defendant.

11

12        This matter comes before the Court on Defendant Elliot Rust Companies, LLC's

13  ("Elliot Rust") motion to dismiss or stay pending arbitration (Dkt. 11).  The Court has

14  considered the pleadings filed in support of and in opposition to the motion and the

15  remainder of the file and hereby denies Elliot Rust's motion for the reasons stated herein.

16              **I. PROCEDURAL AND FACTUAL BACKGROUND**

17        On January 1, 2013, Plaintiff Joseph Scolari ("Scolari") became an owner of Elliot

18  Rust.  Dkt. 1 ("Comp.") ¶ 3.2.  Scolari received a ten percent interest in Elliot Rust

19  pursuant to a Grant Agreement.  *Id.* ¶ 3.4; Dkt. 13, Declaration of Cesar Scolari ("Cesar

20  Dec."), Ex. A ("Grant Agreement") ¶ 1.

21        The Grant Agreement was executed between Scolari and Elliot Rust "according to

22  the terms of the Amended and Restated LLC Agreement of Elliot Rust Companies, LLC

1  dated January 1, 2013 (the 'LLC Agreement')." *Id.* at 1.  The Grant Agreement also

2  provides:

3  > [Scolari] understands, acknowledges and agrees that, upon execution of this
   > Grant Agreement and the joinder to the LLC Agreement, [Scolari] shall,

4  > without further action or deed, thereupon be bound by the LLC Agreement,
   > as it may thereafter be restated or amended, as though a direct signatory

5  > thereto.

6  *Id.* ¶ 5.  Finally, the Grant Agreement includes the following jurisdiction clause:

7  > <u>Governing Law: Jurisdiction</u>.  This Grant Agreement and the
   > transaction contemplated hereby shall be governed by and construed

8  > according to the laws of the state of Washington.  With respect to any
   > dispute arising out of or related to this Grant Agreement or the LLC

9  > Agreement, the parties hereby consent to the exclusive jurisdiction of the
   > United States District Court for the Western District of Washington . . . .

10  *Id.* ¶ 11(b).

11  The LLC Agreement, in turn, contains an arbitration provision:

12  > <u>Arbitration</u>.  All disputes, claims or controversies relating to this

13  > Agreement that are not resolved by mediation shall be submitted to final
   > and binding arbitration . . . . Questions or arbitrability or the scope of the

14  > parties' agreement to arbitrate shall be determined by the arbitrator.

15  Cesar Dec., Ex. B ("LLC Agreement") ¶ 11.17.3.  The LLC Agreement also includes a

16  jurisdiction and venue clause:

17  > <u>Jurisdiction and Venue</u>.  Any suit involving any dispute or matter
   > arising under this Agreement may only be brought in the United States

18  > District Court for the Western District of Washington or the Superior Court
   > of Pierce County.  All Members hereby consent to the exercise of personal

19  > jurisdiction by any such court with respect to any such proceeding.

20  *Id.* ¶ 11.8.

21  On November 6, 2014, Elliot Rust terminated Scolari.  Dkt. 10, Declaration of

22  Joseph Scolari ("Joseph Dec.") ¶ 8.  On December 15, 2014, Elliot Rust offered to

purchase Scolari's interest in the company for $158,882.60.  *Id.* ¶ 9.  On December 22, 2014, Scolari rejected Elliot Rust's offer because he did not believe it was an accurate valuation of his interest in the company.  *Id.* ¶ 10.

On March 18, 2015, Scolari filed suit against Elliot Rust in this Court.  Comp. Scolari seeks a declaratory judgment that he has a twenty-percent profits interest in Elliot Rust.  *Id.* ¶ 4.5.  Scolari also asserts equitable claims against Elliot Rust.  *Id.* ¶¶ 4.6–4.18.

On April 3, 2015, Elliot Rust moved to dismiss or stay this matter pending arbitration.  Dkt. 11.  On April 27, 2015, Scolari responded.  Dkt. 21.  On May 1, 2015, Elliot Rust replied.  Dkt. 23.

## II. DISCUSSION

Elliot Rust moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(3).  Dkt. 11.  Alternatively, Elliot Rust moves to stay this action under the Federal Arbitration Act ("FAA") pending the completion of arbitration.  *Id.*

**A.  Federal Arbitration Act**

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991).  To that end, the FAA requires courts to stay proceedings when an issue before the Court can be referred to arbitration.  9 U.S.C. § 3.

1    Under the FAA, the Court's role is "limited to determining (1) whether a valid

2    agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

3    dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th

4    Cir. 2000).  If the party seeking arbitration establishes both factors, "then the [FAA]

5    requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

6    "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

7    arbitration . . . ." *Id.* at 1131.

8    **B.    Arbitration Clause**

9    Elliot Rust seeks to enforce the LLC Agreement's arbitration clause.  Dkt. 11.

10   "[T]he party seeking to enforce an arbitration agreement bears the burden of showing that

11   the agreement exists and that its terms bind the other party." *Peters v. Amazon Servs.*

12   *LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013).  To determine whether the parties

13   agreed to arbitrate, courts apply ordinary state-law contract principles. *First Options of*

14   *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In Washington, "[t]he role of the

15   court is to determine the mutual intentions of the contracting parties according to the

16   reasonable meaning of their words and acts." *Fisher Props., Inc. v. Arden-Mayfair, Inc.*,

17   106 Wn.2d 826, 837 (1986).

18   Scolari does not dispute that he is bound by the terms of the LLC Agreement.

19   Dkt. 21 at 6.  Scolari, however, argues that an ambiguity exists between the LLC

20   Agreement's arbitration clause and the Grant Agreement's jurisdiction clause, and that

21   this ambiguity should be construed against the drafter, Elliot Rust. *Id.* at 5.

22

1      Under Washington law, ambiguous contract terms must be construed against the

2 drafter. *Wise v. Farden*, 53 Wn.2d 162, 168 (1958).  "A contract provision is ambiguous

3 when its terms are uncertain or when its terms are capable of being understood as having

4 more than one meaning." *Mayer v. Pierce Cnty. Med. Bureau, Inc.*, 80 Wn. App. 416,

5 421 (1995).

6      Here, the Court finds that ambiguity exists between the LLC Agreement and the

7 Grant Agreement.  As acknowledged by Elliot Rust, the LLC Agreement and Grant

8 Agreement were executed as part of an integrated transaction.  Dkt. 23 at 4–5.  Integrated

9 transactions must be construed together.  *Boyd v. Davis*, 127 Wn.2d 256, 261 (1995);

10 *Kenney*, 100 Wn. App. 467, 474 (2000).  Although the LLC Agreement provides that all

11 disputes relating to the LLC Agreement are subject to arbitration, the Grant Agreement

12 provides that any dispute arising out of the Grant Agreement or the LLC Agreement is

13 subject to the exclusive jurisdiction of the United States District Court for the Western

14 District of Washington.  *Compare* LLC Agreement ¶ 11.17.3, *with* Grant Agreement

15 ¶ 11(b).

16      Defendants argue that these two provisions do not conflict.  According to

17 Defendants, the Grant Agreement simply provides that this Court may retain jurisdiction

18 pending arbitration.  Dkt. 23 at 6.  Yet Scolari's interpretation is also reasonable.  In light

19 of these competing interpretations, an ambiguity exists and this ambiguity must be

20 construed against Elliot Rust.

21      The Court also notes that ambiguity exists within the LLC Agreement itself.  In

22 addition to the arbitration clause, the LLC Agreement contains a jurisdiction and venue

1   clause, which provides that "[a]ny suit involving any dispute or matter arising under this

2   Agreement may only be brought in the United States District Court for the Western

3   District of Washington or the Superior Court of Pierce County."  LLC Agreement ¶ 11.8.

4   On its face, this clause conflicts with the arbitration clause's requirement that "all

5   disputes, claims or controversies relating to [the LLC] Agreement . . . shall be submitted

6   to final and binding arbitration."  *Id.* ¶ 11.17.3.  Thus, the LLC Agreement itself is

7   internally incongruous.

8        Although the FAA establishes a strong presumption in favor of arbitration, that

9   policy only comes into play after the Court determines that the parties have an

10   enforceable arbitration clause.  *See Chiron Corp.*, 207 F.3d at 1131 ("[A]ny doubts

11   concerning *the scope of arbitrable issues* should be resolved in favor of arbitration . . . ."

12   (emphasis added)).  Here, ambiguity exists as to the enforceability of the LLC

13   Agreement's arbitration clause, and thus the FAA's policy favoring arbitration is not

14   implicated.

### III. ORDER

16        Therefore, it is hereby **ORDERED** that Elliot Rust's motion to dismiss or stay

17   pending arbitration (Dkt. 11) is **DENIED.**

18        Dated this 2nd day of June, 2015.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 6